# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KONINKLIJKE PHILIPS N.V. and <br> PHILIPS LIGHTING NORTH AMERICA <br> CORPORATION, <br><br> *Plaintiffs*, <br><br> v. <br><br> AMERLUX, LLC and <br> AMERLUX EXTERIOR, LLC, <br><br> *Defendants*. | Civil Action No. 1:15-cv-13086-LTS |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS AMERLUX, LLC'S AND AMERLUX EXTERIOR, LLC'S MOTION TO STAY THIS MATTER PENDING RESOLUTION OF INTER PARTES REVIEW PROCEEDINGS

**Table of Contents**

Page

INTRODUCTION ...........................................................................................................................1

FACTUAL BACKGROUND ..........................................................................................................2

    A.    The Parties ..................................................................................................................2

        1.    Philips and its LED Licensing Program.........................................................2

        2.    Amerlux ..........................................................................................................3

    B.    Background and Procedural Status of this Lawsuit ...................................................4

    C.    The Recently-Instituted *Inter Partes* Review Proceedings.......................................5

ARGUMENT ...................................................................................................................................6

    I.    This Case Is in Its Initial Stage ..................................................................................7

    II.    A Stay Would Likely Simplify The Issues ...............................................................7

    III.    A Stay Would Not Unduly Prejudice Philips or Provide a Clear Tactical Disadvantage to Philips............................................................................11

CONCLUSION..............................................................................................................................13

**Table of Authorities**

Page

**Cases**

*ACQIS, LLC v. EMC Corp.*, 2015 U.S. Dist. LEXIS 75138
  (D. Mass. June 10, 2015) .................................................................................7, 9, 10, 12

*Aplix Ip Holdings corp. v. Sony Computer Entm't, Inc.*,
  2015 U.S. Dist. LEXIS 133051 (D. Mass. Sept. 28, 2015) ...................................................6, 12

*Athenahealth, Inc. v. Carecloud Corp.*, 2014 U.S. Dist. LEXIS 97105,
  (D. Mass. July 17, 2014) ...................................................................................................8

*Body Sci, LLC v. Philips Elec. N. Am. Corp. (In re Body Sci. LLC)*,
  2012 U.S. Dist. LEXIS 158835, (D. Mass. Nov. 2, 2012) ...................................................8

*Boston Heart Diagnostics Corp. v. Health Diagnostics Lab., Inc.*,
  2014 U.S. Dist. LEXIS 67711 (D. Mass. May 16, 2014) ................................................5, 9

*Evolutionary Intelligence LLC v. Yelp Inc.*, 2013 U.S. Dist. LEXIS 178547
  (N.D. Cal. Dec. 18, 2013) ........................................................................................... 11-12

*Honeywell Int'l., Inc. v. Furuno Electric Co. Ltd.*, 2010 U.S. Dist.
  LEXIS 83707 (D. Minn. July 30, 2010) .......................................................................9

*Illumisys, Inc. v. Philips Elec. North America*, (E.D. Mich., Case No. 2:13-cv-14961) ...............10

*In re Translogic Tech., Inc.*, 504 F.3d 1249 (Fed. Cir. 2007) .........................................................10

*Intellectual Ventures II LLC v. U.S. Bancorp*, 2014 U.S. Dist. LEXIS 153638
  (D. Minn. Aug. 7, 2014) ...................................................................................................9

*Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292 (Fed. Cir. 2015) ..............................................5

*Robert Bosch Healthcare Sys. V. Cardiocom, LLC*, 2014 U.S. Dist. LEXIS 92792
  (N.D. Cal. July 3, 2014) ...................................................................................................12

*Serv. Solutions U.S., L.L.C. v. Autel. US Inc.*, 2015 U.S. Dist. LEXIS 9582
  (E.D. Mich. Jan. 28, 2015) ...............................................................................................9

*Software Rights Archive, LLC v. Facebook, Inc.*, 2013 Dist. LEXIS 133707
  (N.D. Cal. Sept. 17, 2013) ................................................................................................7

*SSW Holding Co. v. Schott Gemtron Corp.*, 2013 U.S. Dist. LEXIS 118326
  (W.D. Ky. Aug. 19, 2013) ...............................................................................................10

-iii-

*SurfCast, Inc. v. Microsoft Corp.,* 2014 U.S. Dist. LEXIS 160062
   (D. Me. Nov. 14, 2014)......................................................................................................12

*Ultratec, Inc. v. CaptionCall, LLC*, 611 Fed. Appx. 720 (Fed. Cir. 2015)........................................8

*Versata Software, Inc. v. Callidus Software, Inc.,* 771 F.3. 1368 (Fed. Cir. 2014),
   *vacated on other grounds*, 780 F.3d 1134 (Fed. Cir. 2015)..............................................9

## **Rules and Other Authorities**

35 U.S.C. §102..............................................................................................................................1, 5

35 U.S.C. §103..........................................................................................................................1, 5, 6

35 U.S.C. §§311-319 .......................................................................................................................5

35 U.S.C. §314(a)(11)....................................................................................................................12

37 C.F.R. §42.100(c)......................................................................................................................12

# INTRODUCTION

Defendants Amerlux, LLC and Amerlux Exteriors, LLC ("Amerlux") submit this memorandum of law in support of their motion to stay this case pending resolution of *inter partes* review ("IPR") proceedings involving two of the patents asserted in this matter. On November 29, 2015, the Patent Trial and Appeal Board ("PTAB") granted the request for inter partes review on U.S. Patent Nos. 6,230,774 ("the '774 Patent") and 7,038,399 ("the '399 Patent"), two of the patents asserted by Plaintiffs Koninklijke Philips N.V. and Philips Lighting North America Corporation (collectively, "Philips") against Amerlux in this case. Those IPRs had been requested by Wangs Alliance Corp., which is another company sued by Philips for patent infringement.[1] In the two IPRs, the PTAB will adjudicate validity of certain claims in those patents, which Amerlux has also challenged on invalidity grounds. (*See* Defendants' Answer (Dkt. No. 12) at p. 6, 9, and 11).

By granting the IPR requests on the '774 and '399 Patents, the PTAB has decided that there is a reasonable likelihood that those patents are invalid under 35 U.S.C. §§ 102 and/or 103. *See generally* IPR No. 2015-01294, *Wangs Alliance Corp. d/b/a WAC Lighting Co. v. Philips Lighting North America Corporation*, Paper No. 9 (November 25, 2015); IPR No. 2015-01290, *Wangs Alliance Corp. d/b/c WAC Lighting Col. v. Koninklijke Philips N.V.*, Paper No. 9 (November 25, 2015).[2] In light of PTAB's decisions to institute the IPR proceedings against the '774 Patent and the '399 Patent, the Court should stay Philips' case against Amerlux pending the final resolution of the IPR proceedings.

---

[1] See *Koninklijke Philips N.V. v. Wangs Alliance Corporation d/b/a WAC Lighting Co.* ("WAC") in this District. (Civil Action No. 14-cv-12298-DJC)
[2] See Declaration of Richard H. Brown ("Brown Decl."), submitted herewith, Ex. A and B.

-2-

The factors considered on such a stay request (i.e., stage of the proceedings, whether a stay is likely to simplify issues, and if a stay will unduly prejudice or be a tactical disadvantage to the non-moving party) all support staying this matter.  The case is in its infancy.  Discovery has just begun, claim construction has not taken place, and no trial date has been set.  Although Philips has asserted four other patents in this case against Amerlux, a stay will nevertheless simplify issues in question and trial of the case, including, for example, a potential reduction in the number of asserted claims or patents, and the avoidance of wasteful and costly discovery if claims in the '774 or '399 Patents are withdrawn or narrowed in the IPR proceedings.

A stay will not unduly prejudice Philips or cause it a tactical disadvantage.  As discussed below, Philips waited years to file suit after first contacting Amerlux about some of the patents asserted in this case.  This deliberate strategy and eventual lawsuit against Amerlux typify Philips' approach to force LED companies to take a license under its LED licensing program.  Having to wait about a year for a PTAB decision will not unduly prejudice or harm Philips, which is a multi-billion dollar company whose only realistic remedy (if there were infringement of a valid patent) is monetary damages.  Awaiting the outcome of the IPR proceeding will very likely streamline this litigation, providing a benefit to the parties as well as the Court.

## FACTUAL BACKGROUND

**A. The Parties**

  **1. Philips and its LED Licensing Program**

Philips is an extremely large electronics company claiming to employ over 110,000 people across more than 60 countries. (Brown Decl., Ex. C, at 4.)  According to its 2014 Annual Report, Koninklijke Philips N.V. generated approximately €21.4 billion, or approximately $23.2 billion (at today's exchange rate), in sales.  (*Id.*)

Since at least 2008, Philips has had a licensing program, now known as the enabLED: LED Luminaires and Retrofit Bulbs Licensing Program ("Philips' LED Licensing Program"), through which it licenses patents to entities that make or sell LED light fixtures ("luminaires"), among other products. Philips claims to have 600 licensees in the program, which is run through its Intellectual Property & Standards ("IP&S") division. (*See* Brown Decl., Ex. D) As exemplified in the history of its discussions with Amerlux (which are detailed below), Philips' strategy appears to be that it focuses on a particular licensing "target" or series of "targets" within a given period and attempts to convince these "targets" to become licensees. After convincing them to become a licensee or filing a lawsuit, Philips then moves on to another set of "targets." That strategy does not suggest any particular reason why Amerlux was first contacted in August 2012, as opposed to earlier or later. The arbitrary decision about when to contact an LED company to take a license means that there is no particular urgency for this case to be expedited. Instead, it is simply another battle in Philips' campaign to have manufacturers and sellers of LED luminaires pay royalties.

## 2. Amerlux

Amerlux is a privately owned lighting company, and is a leading innovator of architectural lighting in the LED space. Amerlux designs, manufactures, and delivers high performance, efficient, and customizable lighting solutions in both commercial and residential sectors. Amerlux's principal place of business is in Oakland, New Jersey. It employs approximately 250 people, and its annual revenue for 2014 was less than 0.5% of the annual revenue reported by Philips. (Brown Decl., ¶7).

**B.     Background and Procedural Status of this Lawsuit**

In August 2012, Philips first contacted Amerlux about the LED licensing program. After a series of on-again, off-again communications between Philips and Amerlux over a 3-year period, Philips filed this suit on August 5, 2015. (Brown Decl., ¶6). In addition to the '774 Patent and the '399 Patent, Philips alleges that Amerlux infringes U.S. Patent Nos. 6,094,014, 6,577,512, 7,262,559, and 8,220,958 (collectively, with the '774 Patent and the '399 Patent, "the Asserted Patents"). Amerlux answered the Complaint on October 26, 2015 denying that it infringes and asserting that each patent is invalid. (*See generally* Answer and Counterclaim (Dkt. No. 12.))[3]

The claims of the '399 Patent are generally directed to lighting systems that are configured to provide LED lighting with dimming capability. The Complaint asserts that a broad array of Amerlux's products infringe unspecified claims of the '399 patent. (Complaint ¶27). The claims of '774 patent are generally directed to a luminaire having certain components: (1) a light emission window; (2) a set of lighting units with at least one LED chip; and (3) an optical system. Philips claims generally that Amerlux's LED products infringe unspecified claims of the patent but identifies only Amerlux's "Contour family" specifically. (*Id.* ¶17).

After an unsuccessful effort to settle this matter, discovery has only just begun, and the Court has not set a trial date. Based on agreements incident to the settlement discussions, the parties are required to respond to recently-served discovery requests in mid-January 2015. Philips' claim assertions are due on February 29, 2016, and Amerlux's invalidity contentions are due on April 14, 2016.

---

[3] The Complaint does not identify the particular claims allegedly infringed by Defendants.

**C.   The Recently-Instituted *Inter Partes* Review Proceedings**

In 2011, Congress created the inter partes review procedure as part of the legislation known as the America Invents Act (35 U.S.C. §§311-319) to encourage parties challenging the validity of patents to have them reviewed expeditiously by the US Patent & Trademark Office, rather than through civil proceedings in federal court. *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1303 (Fed. Cir. 2015) ("Through enactment of the America Invents Act ('AIA'), Congress created the new IPR proceeding for the purpose of providing quick and cost effective alternatives to litigation."). Courts are encouraged to stay parallel litigation pending the IPR decision of a patent's validity. *Boston Heart Diagnostics Corp. v. Health Diagnostics Lab.*, Inc., Civil No. 13-13111-FDS, 2014 U.S. Dist. LEXIS 67711, at *5-6 (D. Mass. May 16, 2014) ("There is a liberal policy in favor of granting motions to stay[, which] gives full effect to a process that was intended to settle validity disputes more quickly and less expensively than litigation, and to allow courts to refer patent validity questions to the expertise of the PTO.") (internal quotations and modifications omitted).

In May 2014, Philips filed a patent infringement suit against Wangs Alliance Corporation d/b/a WAC Lighting Co. ("WAC") in this District, (Civil Action No. 14-cv-12298-DJC). Two of the patents asserted by Philips against WAC are the '774 and '399 Patents. WAC filed several IPR petitions in May 2015, challenging the validity of many of the claims in patents-in-suit in that case. Of relevance here are two IPR petitions filed separately against the '399 Patent (IPR No. 2015-01294) and the '774 Patent (IPR No. 2015-01290).

In the petition filed in IPR No. 2015-01294, WAC asserts that claims 7, 8, 17, 28, and 34 of the '399 Patent are: (1) invalid under 35 U.S.C. § 102 for being anticipated by U.S. Patent No. 5,661,645 ("the Hochstein patent"); (2) invalid under 35 U.S.C. § 103 for being obvious over

U.S. Patent No. 6,225,759 in view of the Hochstein patent; and (3) invalid under 35 U.S.C. § 103 for being obvious over the Hochstein patent in view of U.S. Patent No. 5,818,705.  In IPR No. 2015-01290, WAC asserts that claims 1, 3, 5, and 14 of the '774 Patent are invalid under 35 U.S.C. § 103 for being obvious over U.S. Patent No. 5,803,579, in view of an article written by F. A. Kish, et al. entitled *High Luminous Flux Semiconductor Wafer-Bonded AlGaInP/GaP Large-Area Emitters*, published on October 13, 1994.

On November 25, 2015, the PTAB granted both IPR petitions, finding that there is a reasonable likelihood that the petitioner would prevail with respect to at least one of the claims challenged in each of the petitions.  *See* IPR No. 2015-01294, Paper No. 9; IPR No. 2015-01290, Paper No. 9.  In the district court case (which is much further along than this case), WAC has sought a stay, which Philips has opposed.  That request is pending before Judge Casper.

Separate and apart from IPRs filed by WAC and recently granted by the PTAB, Amerlux is preparing post-grant requests on the four additional patents asserted against Amerlux. Subject to the disposition by the PTO of those requests, there may be a further reason to stay this matter.

## ARGUMENT

A court has the inherent power to manage its docket by staying proceedings.  *Aplix Ip Holdings Corp. v. Sony Computer Entm't, Inc.*, No. 14-cv-12745-MLW, 2015 U.S. Dist. LEXIS 133051, at *4 (D. Mass. Sept. 28, 2015).  Courts generally consider three factors in deciding whether to stay an action: (1) the stage of the litigation, including whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and the trial of the case; and (3) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party.  *Id.* at *5.  Here, all three factors favor granting a stay.

**I.      This Case Is in Its Initial Stage.**

This case is in its infancy. The Court recently adopted the Scheduling Order proposed by the parties, and no trial date has been set. The parties have just begun discovery with the exchanges of initial disclosures and each party's first set of discovery requests. Responses to the written discovery are due in mid-January. The significant dates in that Order are months away, with Philips' preliminary infringement assertions not due until February 29, 2016.

In cases where discovery is at its initial stage, courts routinely grant motions to stay the litigation, citing savings of discovery costs and duplicative litigation efforts. *See, e.g., id*. at *4-5 (granting stay motion, as "discovery has not occurred and the court has not set a trial date"); *ACQIS, LLC v. EMC Corp.*, Civil Action No. 14-cv-13560-ADB, 2015 U.S. Dist. LEXIS 75183, at *3-4 (D. Mass. June 10, 2015) (granting stay motion because in part "a significant amount of work still remains to be done by the parties"). All of the pretrial work still needs to be done by the parties, and a stay could very well result in the parties avoiding some discovery and other work altogether, as explained further below.

**II.     A Stay Would Likely Simplify The Issues**

A stay in cases such as this one "effectuates the intent of the AIA by allowing the agency with expertise to have the first crack at cancelling any claims that should not have issued in the patents-in-suit before costly litigation continues." *Software Rights Archive, LLC v. Facebook, Inc.*, No. C-12-3970 RMW, 2013 Dist. LEXIS 133707, at *21 (N.D. Cal. Sept. 17, 2013). Courts acknowledge many benefits from a stay in cases pending post-grant proceedings (such as the IPR proceeding). For example, the prior art presented to the Court will first have been considered by the PTAB with its legal and technical expertise; discovery problems relating to prior art can be alleviated by PTAB's review; the outcome of the post-grant proceedings could encourage

settlement discussions between the parties without involving of the Court, prosecution history from the post-grant proceedings can be admitted at trial potentially reducing the complexity and length of the trial; a potential reduction in claims, defenses and evidence based on the results of the post-grant proceedings, and the cost of litigation is likely to be reduced. *See Ultratec, Inc. v. CaptionCall, LLC,* 611 Fed. Appx. 720, 722 (Fed. Cir. 2015); *Athenahealth, Inc. v. Carecloud Corp.*, No. 13-cv-10794-IT, 2014 U.S. Dist. LEXIS 97105, at *7-8 (D. Mass. July 17, 2014); *Body Sci. LLC v. Philips Elec. N. Am. Corp. (In re Body Sci. LLC)*, MDL No. 1:12-md-2375-FDS, 2012 U.S. Dist. LEXIS 158835, at *17-18 (D. Mass. Nov. 2, 2012) (citations omitted).

With the PTAB having granted IPR petitions against the '399 Patent and the '774 Patent, the scope of this case is likely to change after resolution of those IPR proceedings. Statistics from the PTAB indicate that out of 14332 claims challenged in instituted IPR proceedings, 6774 of them, or nearly 50%, are found to be unpatentable in final determinations issued by the PTAB. (Brown Decl., Ex. E at 12). Thus, if the "success rate" of the IPRs were applied to the circumstances here, five of the 10 claims under review in the IPR proceedings against the '399 Patent and the '774 Patent, roughly five of them are likely to be cancelled by the PTAB, which does not take into consideration the frequency with which patent holders are required to make narrowing amendments in an effort to preserve validity.

Given the likelihood that the claims in the '399 and '774 Patents will either be invalidated or narrowed, allowing this litigation to continue concurrently with the IPR proceedings would waste significant time and resources. Courts recognize that if a case proceeds and the PTAB ultimately cancels the any or all of the challenged claims, the time and resources devoted to the litigation of those claims will have been wasted. Likewise, if the case proceeds, and the claims are amended, the litigation proceedings will have to be repeated on the amended

claims.  If a patent owner makes narrowing arguments to the PTAB to attempt to distinguish the prior art, the litigation proceedings, particularly claim construction proceedings, may have to be repeated so that such narrowing arguments can be properly considered." *Intellectual Ventures II LLC v. U.S. Bancorp*, Civil No. 13-2071 (ADM/JSM), 2014 U.S. Dist. LEXIS 153638, at *21 (D. Minn. Aug. 7, 2014).  *See also Honeywell Int'l., Inc. v. Furuno Electric Co. Ltd.*, No. 09-3601 (MJD/AJB), 2010 U.S. Dist. LEXIS 83707, at *8 (D. Minn. July 30, 2010) ("Without a stay, discovery may be far broader in scope than necessary, and the Court might spend time issuing Markman interpretations of and examining the validity of claims that may be modified or eliminated through the reexamination process.").

The fact that IPRs were instituted on two of the six patents asserted against Amerlux should not affect whether a stay is appropriate.  Proceeding with discovery of those products, with the claims of two patents in jeopardy of changing during the discovery phase, would not be sensible because there remains the potential to significantly simplify the issues. *Versata Software, Inc. v. Callidus Software, Inc.*, 771 F.3d. 1368, 1371-1372 (Fed. Cir. 2014), *vacated on other grounds*, 780 F.3d 1134 (Fed. Cir. 2015) ("there can still be a simplification of the issues when only some, but not all, of the claim asserted in litigation are challenged [before the PTAB]");  *ACQIS*, 2015 U.S. Dist. LEXIS 75183, at *12 (granting stay even though "only 2 of the 11 patents-in-suit and only 3 of the 22 claims asserted . . . are under review in the instituted IPRs"); *Serv. Solutions U.S., L.L.C. v. Autel.US Inc.*, No. 13-10534, 2015 U.S. Dist. LEXIS 9582 ( E.D. Mich. Jan. 28, 2015) ("it would be unwise to permit full discovery to proceed while the validity of [1 of 7 patents-in-suit] may be determined in the next few months"); *Boston Heart Diagnostics Corp.*, 2014 U.S. Dist. LEXIS 67711 at *11 (finding the "efficiency factor weighs somewhat in favor of a stay" when 7 of 14 claims were challenged before the PTO).  Indeed,

Philips itself, through one of its own entities (Philips Electronics North America Corp.), argued that a stay would be appropriate when it filed IPR petitions on three of five patents, because the issues in the case would be simplified. *See Illumisys, Inc. v. Philips Elec. North America*, (E.D. Mich., Case No. 2:13-cv-14961) at Docket Entry 39. The fact that the Complaint does not specify the particular claim(s) supposedly infringed by Defendants is not an impediment to a stay. *See SSW Holding Co. v. Schott Gemtron Corp.*, Civil Action No. 3:12CV-661-S, 2013 U.S. Dist. LEXIS 118326 (W.D. Ky. Aug. 19, 2013) (granting stay even though plaintiff had not identified the claims that are allegedly infringed and the defendant challenged 3 out of 61 claims of the patent-in-suit in the PTAB).

Even in the unlikely event that the challenged claims survive the IPR proceedings without any change in scope, the additional prosecution history before the PTAB on the '399 Patent and the '774 Patent would be highly relevant to this case. Without a stay, the parties would have to reopen discovery and potentially claim construction based on Plaintiffs' statements before the PTAB, which is contrary to the efficiency sought by Congress in establishing the IPR proceeding. *See ACQIS, LLC*, 2015 U.S. Dist. LEXIS 75183, at *13 ("denying a stay entirely, or granting a stay only as to those patents and claims under IPR, could result in costly inefficiencies for the parties and the Court by introducing a need for certain portions of discovery and motion practice to be redone after the completion of the IPRs").

Granting a stay now will also avoid the possibility of inconsistent results between decisions by the Court and the PTAB. *See In re Translogic Tech., Inc.*, 504 F.3d 1249 (Fed. Cir. 2007). In *Translogic*, the court did not stay the case pending resolution of a reexamination of the asserted patent, but instead spent judicial and party resources on the litigation from filing to trial. *Id.* at 1251. Shortly after the conclusion of the trial, during which a jury deliberated and

delivered a verdict of induced infringement and awarded damages, the Patent Office invalided the patent-in-suit. *Id.* The Federal Circuit affirmed the Patent Office's decision and vacated the jury verdict and damages award. *Id.* Considerable expense and time could have been saved had the litigation been stayed in the District Court.

Here, a stay would advance the laudable goals of consistency between the outcome of the IPR proceedings and that of this Court and conservation of time and expense going forward, including the conservation of judicial resources. Finally, if WAC's stay application is granted, that would further militate in favor of granting a stay. It would underscore the potential for inconsistency between proceeding in the District Court while, at the same time, trying the validity issues in the PTAB.

### III.    A Stay Would Not Unduly Prejudice Philips or Provide a Clear Tactical Disadvantage to Philips

A stay in the case would not unduly prejudice or present a clear tactical disadvantage to Philips. This is a case that was brought after three years of intermittent discussions between Philips and Amerlux in which Philips attempted to convince Amerlux to become another licensee in the LED Licensing Program. There is no particular urgency for Philips to pursue this case quickly, as its only potential remedy would be monetary. The fact that Philips waited three years to file this lawsuit reflects that Philips is engaged in a long-term strategy and is using its significant resources to pursue companies in litigation that are not willing to take a license under the onerous terms offered by Philips. Because Philips' only potential remedy is monetary, a stay of this matter will not unduly prejudice Philips. In other words, having decided to write to Amerlux when it did about the LED licensing program and then to wait three years to file a Complaint, Philips can surely wait until the validity of two of the six patents is resolved in the PTAB. *See Evolutionary Intelligence LLC v. Yelp Inc.*, No. C-13-03587 DMR, 2013 U.S. Dist.

LEXIS 178547, at *25 (N.D. Cal. Dec. 18, 2013) ("a patent licensor cannot be prejudiced by a stay because monetary damages provide adequate redress for infringement") (citations omitted); *Robert Bosch Healthcare Sys. v. Cardiocom, LLC*, No. C-14-1575 EMC, 2014 U.S. Dist. LEXIS 92792, at *22 (N.D. Cal. July 3, 2014) (granting stay motion when the plaintiff had been willing to actively license to competitors, including the defendant); *see also ACQIS*, 2015 U.S. Dist. LEXIS 75183, at *14, ("mere delay does not rise to the level of undue prejudice") (quoting *SurfCast, Inc. v. Microsoft Corp.*, No. 2:12-cv-333-JDL, 2014 U.S. Dist. LEXIS 160062 (D. Me. Nov. 14, 2014)). A stay of a year until the completion of the IPRs will not unduly prejudice Philips.

Nor is there any tactical disadvantage to Philips in waiting. Its only possible remedy is for money damages, and given the nature of the dispute there is no concern about loss of evidence or the fading of witnesses' memories, especially with the short statutory deadlines for completing the IPR proceedings.[4] Indeed, those short deadlines for IPRs means that a stay may ultimately facilitate the resolution of this case. *Aplix Ip Holdings Corp.*, 2015 U.S. Dist. LEXIS 133051, at *7 ("if some of the patents in dispute are found to be invalid by the PTO, the narrowed case may proceed more quickly").

---

[4] "An inter partes review proceeding shall be administered such that pendency before the Board after institution is normally no more than one year. The time can be extended by up to six months for good cause by the Chief Administrative Patent Judge, or adjusted by the Board in the case of joinder." 37 C.F.R. § 42.100(c); s*ee also* 35 U.S.C. § 314(a)(11).

## **CONCLUSION**

For the reasons set forth above, Amerlux requests that the Court grant its Motion to Stay.

        Respectfully submitted,

        AMERLUX, LLC and
        AMERLUX EXTERIOR, LLC,

        By their attorneys,

        /s/ Jonathan I. Handler
        Jonathan I. Handler (BBO #561475)
        jihandler@daypitney.com
        DAY PITNEY LLP
        One International Place
        Boston, MA 02110
        T: (617) 345-4600
        F: (617) 345-4745

        Anthony J. Marchetta (*pro hac vice*)
        amarchetta@daypitney.com
        Richard H. Brown (*pro hac vice*)
        rbrown@daypitney.com
        DAY PITNEY LLP
        One Jefferson Road
        Parsippany, NJ 07054-2891
        Telephone: (973) 966-6300
        Facsimile: (973) 206-1015

Dated: December 18, 2015

## **CERTIFICATE OF SERVICE**

    I, Jonathan I. Handler, hereby certify that on this 18th day of December 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

                                      /s/ Jonathan I. Handler
                                      Jonathan I. Handler