## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V. and PHILIPS LIGHTING NORTH AMERICA CORPORATION,<br><br>       *Plaintiff*s,<br><br>v.<br><br>AMERLUX, LLC and AMERLUX EXTERIOR, LLC,<br><br>       *Defendants*. | Civil Action No. 1:15-cv-13086-LTS |

**DEFENDANTS AMERLUX, LLC'S AND AMERLUX EXTERIOR, LLC'S REPLY BRIEF IN SUPPORT OF MOTION TO STAY THIS MATTER PENDING <u>RESOLUTION OF INTER PARTES REVIEW PROCEEDINGS</u>**

**<u>(LEAVE TO FILE GRANTED ON JANUARY 12, 2016)</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ...............................................................................................1

II.    ARGUMENT ......................................................................................................2

     A.     This Case Is in Its Initial Stage .................................................................2

     B.     A Stay Would Simply the Issues in This Case ........................................3

     C.     A Stay Will Not Cause Undue Prejudice or Present A Tactical
           Disadvantage to Philips..............................................................................6

III.   CONCLUSION..................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

## Cases

*ACQIS, LLC v. EMC Corp.,* 2015 U.S. Dist. LEXIS 75183 (D. Mass. June 10, 2015) ..............3, 5

*Acumed LLC v. Stryker Corp.,* 551 F.3d 1323 (Fed. Cir. 2008) ......................................................8

*ADA Solutions, Inc. v. Engineered Plastics., Inc.,* 826 F. Supp. 2d 348
    (D. Mass 2011)...............................................................................................................................7

*Aplix Ip Holdings Corp. v. Sony Computer Entm't, Inc.,*
    2015 U.S. Dist. LEXIS 133051 (D. Mass. Sept. 28, 2015) ...................................................2, 3

*Asetek Holdings, Inc. v. Coller Master Co.,* 2014 U.S. Dist. LEXIS 47134
    (N.D. Cal. Apr. 3, 2014) ..............................................................................................................3

*Endotach LLC v. Cook Med., Inc.,* 2014 U.S. Dist. LEXIS 27802 (S.D. Ind. March 5, 2014).......6

*Evolutionary Intelligence LLC v. Facebook, Inc.,* 2014 U.S. Dist. LEXIS 9149
    (N.D. Cal. Jan. 23, 2014) .......................................................................................................... 5-6

*Evolutionary Intelligence LLC v. Yelp Inc.,* 2013 U.S. Dist. LEXIS 178547
    (N.D. Cal. Dec. 18, 2013) .........................................................................................................5, 6

*e-Watch, Inc. v. Lorex Can., Inc.,* 2013 U.S. Dist. LEXIS 138198 (S.D. Tex. Sept. 26, 2013)......5

*Halo Elecs., Inc. v. Pulse Elecs, Inc.,* 2013 U.S. Dist. LEXIS 84672
    (D. Nev. June 17, 2013) ...............................................................................................................9

*Intellectual Ventures v. Huntington Bancshares, Inc.,* 2014 WL 2589420
    (S.D. Ohio June 10, 2014) ...........................................................................................................5

*Neste Oil Oyj v. Dynamic Fuels LLC,* 2013 U.S. Dist. LEXIS 13081
    (D. Del. Jan. 31, 2013).................................................................................................................8

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,*
    449 Fed. Appx. 923, 932 (Fed. Cir. 2011) .................................................................................9

*Robert Bosch LLC v. Pylon Mfg. Corp.,* 659 F.3d 1142 (Fed. Cir. 2011) ......................................9

*Rosen Entertainment Sys., LP v. Icon Enterprises,* 359 F. Supp. 2d 902 (C.D. Cal. 2005) ...........9

*RR Donnelley & Sons Co. v. Xerox Corp.,* 2013 U.S. Dist. LEXIS 176620
    (N.D. Ill. Dec. 16, 2013) ..............................................................................................................3

*Serv. Solutions U.S. L.L.C. v. Autel US Inc.,* 2015 U.S. Dist. LEXIS 9582
(E.D. Mich. Jan. 28, 2015)..........................................................................................5

*SSW Holding Co. v. Schott Gemtron Corp.*, 2013 U.S. Dist. LEXIS 118236
(W.D. Ky. Aug. 19, 2013) ...........................................................................................4

*TruePosition, Inc. v. Polaris Wireless, Inc.*, 2013 U.S. Dist. LEXIS 150764
(D. Del. Oct. 21, 2013) ................................................................................................6

*Univ. of Va. Patent Found. v. Hamilton Co.,* 2014 U.S. Dist. LEXIS 135202
(W.D. Va. Sept. 25, 2014) ...........................................................................................5

*Versata Software, Inc. v. Callidus Software, Inc.,* 771 F.3d 1368 (Fed. Cir. 2014) ........................5

## **<u>RULES</u>**

35 U.S.C. § 271(a) ....................................................................................................................9

## I.      INTRODUCTION

Defendants Amerlux, LLC and Amerlux Exteriors, LLC ("Amerlux") submit this reply brief in further support of the Motion to Stay Pending Resolution of *Inter Partes* Review Proceedings ("IPRs").  In their Opposition ("Opp."), Plaintiffs Koninklijke Philips N.V. and Philips Lighting North America Corporation (collectively, "Philips") contend that a stay will not simplify the issues and avoid unnecessary discovery.  That is incorrect.  The parties are about to embark on significant discovery, some of it specific to the two patents subject to the IPRs, which are U.S. Patent Nos. 6,230,774 ("the '774 Patent") and 7,038,399 ("the '399 Patent").  The outcome of the IPRs could make all this discovery unnecessary (if the claims of those patents are invalidated), or subject to supplementation or correction (if the claims are narrowed based on the IPR).  That same calculus would apply to claim construction.  Moving forward with discovery and the claim construction process in light of the uncertainty on the '774 and '399 Patents may very well result in significant wasted effort by the Court and the parties.

Philips argues that a stay would cause it undue harm principally because it competes with Amerlux.  That argument is baseless.  Philips is a multibillion dollar company with a licensing program consisting of 600+ licensees, many of which compete with Philips. There is no evidence that a stay in this case would cause competitive harm to Philips.  Philips' contention of "undue harm" is further undermined by a decision to file suit three years after first contacting Amerlux about some of the patents in August 2012.  Philips touts its boilerplate request for permanent injunctive relief as "proof" of competitive harm, but there is no conceivable possibility that it could obtain such a remedy given Philips' extensive licensing program.  With no undue harm to Philips from a stay, and clear efficiencies to the parties and the Court in waiting for the resolution of the IPRs, the Court should grant Amerlux's motion.

## II.     ARGUMENT

### A.     This Case Is in Its Initial Stage.

There is no dispute that this case has just started, with no trial date set.  Thus, Amerlux meets the first of the three factors considered for a stay application.  *See Aplix Ip Holdings Corp. v. Sony Computer Entm't, Inc.*, No. 14-cv-12745-MLW, 2015 U.S. Dist. LEXIS 133051, at *5 (D. Mass. Sept. 28, 2015).  Philips tries to diminish the import of this factor by claiming that a stay would not avoid discovery because the products accused of infringing the '774 and '399 Patents are also accused of infringing the other four patents.  That statement ignores other aspects of discovery that are patent-specific and would be avoided if the claims of '774 Patent and/or '399 Patent are invalidated or narrowed as a result of the IPRs. For example, if the claims of the patents are invalidated, there would be no need for discovery of: prior art to those patents; conception and reduction to practice of the inventions claimed in those patents; and evidence about the validity and enforceability of those patents.  Another area that would be avoided if the claims of the patents are invalidated is discovery from the inventors.  There are a total of five named inventors on these two patents (two on the '774 Patent and three on the '399 Patent), none of whom are named inventors on the other four patents. A stay could potentially avoid the need for such discovery.  A stay could also obviate the need for Philips to provide infringement contentions on these two patents and for Amerlux to provide invalidity contentions.

Then there is claim construction, which is often costly and time-consuming, with the parties required to meet, brief the issues, and argue their differences at a hearing.  A court then typically issues a written opinion.  The '774 Patent is directed to a luminaire comprising a housing with a light emission window and a light module comprising a set of certain lighting units.  (*See* Ex. B to the Complaint (Dkt. No. 1-2) at col. 1, l. 4-8).  The '399 Patent is directed to

certain methods and approaches for certain dimmer circuits for LED devices.  (*See* Ex. D to the Complaint (Dkt. No. 1-4) at col. 2., l. 50-61).  Claim construction on the claims for those two patents will almost certainly be different from each other and the other four patents, which are directed to different subject matters.  If the claims in the '774 and/or '399 Patents are invalidated, there will be no need for claim construction on those two patents; if they are narrowed, claim construction might be revised or supplemented.  In any event, having the parties embark on claim construction now with the uncertainty of the IPRs would be wasteful and inefficient. Contrary to Philips' assertion, there are considerable economies to be realized if this matter is stayed now at the outset of discovery.[1]

## B.    A Stay Would Simplify the Issues in This Case

Philips contends that a stay would not simplify issues because: four patents will remain at issue; the IPRs extend only to a "fraction" of the claims in the '774 and 399 Patents; Amerlux will not be estopped from asserting defenses because it did not file the IPRs; and the IPRs will not resolve other defenses. (Opp. at 7-12).  Amerlux addresses these points in turn.

It is true that IPRs were instituted only against the '774 and '399 Patents.  But, as discussed above, awaiting resolution of those proceedings before moving forward in this case with discovery and claim construction is likely to simplify the issues.  Statistically speaking, half

---

[1] The cases cited by Philips are inapposite.  In *RR Donnelley & Sons Co. v. Xerox Corp.*, No. 12-cv-6198, 2013 U.S. Dist. LEXIS 176620, at *10 (N.D. Ill. Dec. 16, 2013), Xerox moved for a stay more than a year after the complaint was filed and before the IPRs were instituted.  In *Asetek Holdings, Inc. v. Cooler Master Co.*, No. 12-cv-6198, 2014 U.S. Dist. LEXIS 47134 (N.D. Cal. Apr. 3, 2014) at *13, one rationale for denying a stay was that there was considerable overlap between the two patents at issue there, and much of the effort that could have been saved had already been expended.  Here, virtually no effort has been expended.

The Court should reject Philips' attempt to claim that two cases cited by Amerlux (*Aplix* and *ACQIS*) are not on point because the parties in those cases were not competitors. (Opp. at 7). As discussed below, there is no evidence that a stay would cause any competitive harm to Philips for a variety of reasons, including its LED Licensing Program that allows 600 licensees to compete with Philips.  *See infra* at 8-10.

of the claims subject to IPRs have been invalidated by the PTAB.[2]  Thus, it is likely that at least some of the claims at issue in the IPRs will not survive.  A stay is likely to narrow and simplify issues.  Philips' assertion, that some of the claims from the '774 and '399 Patents that are not subject to the IPRs might ultimately be asserted against Amerlux, should be disregarded.  Philips had presumably identified claims allegedly infringed before it filed the complaint.  Its failure to specify them in opposing this stay motion cannot be grounds to assume that some claims not subject to the IPRs might be asserted against Amerlux.  *See SSW Holding Co. v. Schott Gemtron Corp.*, NO. 3:12CV-661-S, 2013 U.S. Dist. LEXIS 118326 (W.D. Ky. Aug. 19, 2013).

A stay may result in the narrowing of issues on some of the other patents because some foreign counterparts of the patents asserted against Amerlux are at risk, or worse.  For example, Amerlux understands that Philips has in effect withdrawn the European counterpart of U.S. Patent No. 6,577,512, after an office action at the European Patent Office rejected it for lack of novelty.  (*See* Declaration of Henrik Villumsen ("Villumsen Decl.") ¶ 4 attached hereto).  The German counterpart of the U.S. Patent No. 6,094,014 is the subject of an invalidity action in the German Patent Courts.  (*Id.* ¶ 3).  Those proceedings suggest that a stay pending resolution of the IPRs on the '774 and '399 Patents may yield additional efficiencies if Philips is no longer able to assert in good faith that the '512 Patent or the '014 Patent are valid.[3]

Contrary to Philips' insinuation, there is no rule that a stay is unwarranted if some claims and/or patents are not challenged in a post-grant proceeding.  *See Versata Software, Inc. v.*

---

[2] The PTAB has invalidated approximately 47% of claims that are subject to IPRs.  (*See* Ex. E to the Motion to Stay (Dkt. No. 34-6) at 12).

[3]  The German counterpart of the '774 Patent has been invalidated as well, and Philips has appealed that decision.  (Villumsen Decl. ¶ 5).  In the European counterpart to the '399 Patent, Philips has limited the claims due to prior art, and those limitations are not in the '399 Patent.  In addition, there is an appeal pending that seeks to revoke that patent altogether on grounds that it lacks novelty, among other reasons.  (*Id.* ¶ 6).

*Callidus Software, Inc.*, 771 F.3d 1368, 1371-72 (Fed. Cir. 2014); *see also Serv. Solutions U.S., L.L.C. v. Autel.US Inc.*, No. 13-10534, 2015 U.S. Dist. LEXIS 9582 (E.D. Mich. Jan. 28, 2015) (granting stay requested before the PTAB's deadline to rule on one of seven patents-in-suit); *ACQIS, LLC v. EMC Corp.*, Civil Action No. 14-cv-13560-ADB, 2015 U.S. Dist. LEXIS 75183, at *3-4 (D. Mass. June 10, 2015) (granting stay when patents-in-suit were related but only two out of eleven patents-in-suit were challenged before the PTAB).   The clear prospect of simplification on at least two of six patents favors a stay here.   *See e-Watch, Inc. v. Lorex Can., Inc.*, CIVIL ACTION H-12-3314, 2013 U.S. Dist. LEXIS 138198, at *6 (S.D. Tex. Sept. 26, 2013) (incorrect to conflate simplification of the issues with total resolution of the case, which is not a factor considered by the court when addressing a motion for stay); *see also Univ. of Va. Patent Found. v. Hamilton Co.*, No. 3:13-cv-00033, 2014 U.S. Dist. LEXIS 135202, at *5–6 (W.D. Va. Sept. 25, 2014); *Evolutionary Intelligence LLC v. Yelp Inc.*, No. C-13-03587 DMR, 2013 U.S. Dist. LEXIS 178547, at *17-18 (N.D. Cal. Dec. 18, 2013).

Philips also argues against a stay because the IPR petitioner is a third-party and Amerlux would not be estopped by the petitioner's arguments. (Opp. at 8).   That argument does not take into consideration benefits from a third-party IPR, not only in terms of efficiency (*i.e.*, if the patents are invalidated), but guidance from the PTAB even if the challenged claims survive.   *See, e.g., Intellectual Ventures v. Huntington Bancshares, Inc.*, 13-cv-00785, 2014 WL 2589420, at *5 (S.D. Ohio June 10, 2014) (granting stay based on third party IPRs because although defendants are not statutorily estopped from raising the same arguments, the court would have the benefit of the Board's expertise in rejecting those arguments); *Evolutionary Intelligence, LLC v. Facebook, Inc.*, 2014 U.S. Dist. LEXIS 9149, at *8–9 (N.D. Cal. Jan. 23, 2014) (for defendant not bound by the petitions, simplification of the issues could still occur even if claims are

affirmed because a court may consider the PTAB's rationale in assessing whether the party asserting invalidity has met its burden).

Philips also notes that Amerlux will be able to raise other defenses regardless of the IPR proceedings.  (Opp. at 9).  That argument is baseless, for it would mean that no motion to stay pending an IPR should ever be granted because certain defenses are not available in an IPR proceeding.  Obviously, if the PTAB invalidated the challenged claims for anticipation or obviousness, then the additional defenses listed by Philips will not be necessary.  *Yelp*, 2013 U.S. Dist. LEXIS 178547, at *18.  Cases cited by Philips for this notion are distinguishable.[4]

Philips' complaint that Amerlux was aware of the patents in August 2012 but did not file IPR petitions is inaccurate (in part) and irrelevant on the issue of a stay.  It is inaccurate because Philips identified only some of the asserted patents in August 2012.  It is irrelevant because Amerlux moved for a stay application at the outset of the case based on IPRs that had been filed before Philips filed suit against Amerlux.  There is no requirement for Amerlux to have filed its own petitions in order to demonstrate that a stay would promote efficiency.[5]

## C.   A Stay Will Not Cause Undue Prejudice or Present A Tactical Disadvantage to Philips

The third factor is whether a stay would cause Philips undue prejudice or present a clear tactical disadvantage.  As noted in the initial moving papers, Philips took three years after first

---

[4]  For example, in *Endotach LLC v. Cook Med., Inc.*, No. 1:13-cv-01135-LJM-DKL, 2014 U.S. Dist. LEXIS 27802, at *12 (S.D. Ind. Mar. 5, 2014), defendant had already moved for summary judgment relying on § 112 and laches defense.  In *TruePosition, Inc. v. Polaris Wireless, Inc.*, C. A. No. 12-646-RGA/MPT, 2013 U.S. Dist. LEXIS 150764, at *13 (D. Del. Oct. 21, 2013), the court denied the stay request because it was filed nearly a year after case was filed and before there was decision to institute an IPR.  In this case, the two IPRs have already been instituted.

[5]  Philips complains that Amerlux did not disclose at the initial conference that it intended to file post-grant proceedings on Philips' patents.  (Opp. at 13).  That complaint is unjustified, as Philips does not contend that its conduct would have changed had Amerlux stated during the initial scheduling conference that it intended to file post-grant proceedings.

contacting Amerlux to file a lawsuit.  Amerlux also asserted  without contradiction that Philips administers its long-running LED Licensing Program by focusing on certain lighting companies in a given period, and then moving on to a new series of companies.  (Def. Memorandum of Law in support of Motion to Stay at 3).  Against that backdrop, Philips' arguments about undue prejudice are meritless.

Philips contends that it is a direct competitor of Amerlux and that it seeks a permanent injunction, among other remedies. Those contentions do not support Philips' view that a stay would cause it undue prejudice or a tactical disadvantage.  It is true that courts are sometimes less inclined to stay cases between competitors because it permits a defendant more time to sell the accused products, thereby potentially causing harm to a patent holder's competitive standing in the industry. *See ADA Solutions, Inc. v. Engineered Plastics, Inc.*, 826 F. Supp. 2d 348, 351 (D. Mass. 2011) (discussing that while money damages may adequately compensate for a patent-holder's stay-period infringement losses, the patent holder could lose market share during that period).  That reasoning has no force here, however, given the relative size of the parties, the fact that Philips has already licensed over 600 lighting companies under the LED Licensing Program, the lack of any evidence from Philips suggesting that it is a risk, and the fact that Philips filed suit after first contacting Amerlux.

Philips is a very large presence in the lighting industry, with overall sales more than 100 times that of Amerlux.  Philips has submitted no evidence from anyone in its Lighting Sector that allowing Amerlux to continue to sell products will cause Philips any competitive harm.  Of course, there could be no such showing in light of the fact that Philips has licensed over 600 other lighting companies under the LED Licensing Program, which allows them to compete with Philips.  The deliberate approach used by Philips' Intellectual Property & Standards Group

("IP&S") to generate revenue from the LED Licensing Program is yet more proof that the presence of unlicensed lighting companies, such an Amerlux, does not cause any competitive harm to Philips, and that the Licensing Program is strictly about earning revenue. *See Neste Oil Oyj v. Dynamic Fuels LLC*, No. 12-662-GMS, 2013 U.S. Dist. LEXIS 13081 (D. Del. Jan. 31, 2013) (rejecting attorney argument that a stay would not cause undue prejudice because there are a large number of firms in the market and the patent holder did not seek a preliminary injunction).[6]

Philips states that its complaint seeks permanent injunctive relief and implies that this is further proof that a stay would cause it undue harm. That is highly unlikely. Even if Philips were to ultimately prevail on liability, it would be extremely hard pressed to meet the irreparable harm requirement in order to enjoin Amerlux's future sales. Philips has licensed its LED-related patents through the Licensing Program (supposedly on a non-discriminatory basis) to over 600 companies, which undermines Philips' argument that it would be irreparably harmed without a permanent injunction. *See Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) (the fact that patentee has licensed the patent may indicate that money damages would compensate for infringement). The request for permanent injunctive relief in the Complaint is boilerplate pleading, not "evidence" that a stay would cause undue harm to Philips, which is using these patents as a revenue source, not to shut out competitors.[7]

---

[6] Philips bases its argument on the specter of competitive harm to the lighting sector of its business, which is supposedly "walled off" from those in Philips' IP&S division making decisions about the licensing program. If Philips is targeting companies in order to strengthen the competitive position of its Lighting Sector, that strategy would be contrary to its assertions that its IP&S attorneys do not interact with the Lighting Sector for competitive or business intelligence efforts. *See* Philips' Reply of Defendants' Response to Preclude Disclosure of Certain Information to Plaintiffs' In-House Counsel (Dkt. No. 25) at 2.

[7] Philips cites several cases where a court granted an injunction to a patent holder that had licensed the patent. (Opp. at 14). None of them are on point. In one of those cases, *Rosen*

Philips also states that its licensees would be harmed by "Amerlux's continued infringement." (Opp. at 13). The Court should not credit that unsupported argument. There is no evidence that any of Philips' licensees are harmed by Amerlux's sales. Having waited years before suing Amerlux, which is Philips' *modus operandi* in enforcing its patents, Philips cannot credibly complain that its licensees will be harmed by a stay.

Finally, there is no merit to Philips' contention that a stay would subject it to the risk of losing evidence for its indirect infringement claim, as that claim is not in the Complaint. The only allegations are that Amerlux makes, sells, offers to sell, uses or imports, which are all claims of direct infringement under 35 U.S.C. § 271(a).

---

*Entertainment Sys., LP v. Icon Enterprises*, 359 F. Supp. 2d 902 (C.D. Cal. 2005), the court considered the issue based on evidence (not attorney argument) and using a presumption of irreparable harm in patent cases, which is no longer the law. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148-49 (Fed. Cir. 2011). In *Halo Elecs., Inc. v. Pulse Elecs, Inc.*, 2:07-cv-00331-PMP-PAL, 2013 U.S. Dist. LEXIS 84672 at *18 (D. Nev. June 17, 2013), the patent holder and its licensees were smaller than the infringer, a situation that is completely different from the situation in this matter. In *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 449 Fed. Appx. 923, 932 (Fed. Cir. 2011), the Federal Circuit noted that there had been finding by the district court that defendant's infringement caused plaintiff to lose market share, and that the license at issue was to a single downstream customer. Those facts are worlds apart from the situation with Philips and its LED Licensing Program.

## III.    CONCLUSION

For the reasons set forth above and in the Memorandum of Law, Amerlux requests that

the Court grant its Motion to Stay.

Respectfully submitted,

AMERLUX, LLC and
AMERLUX EXTERIOR, LLC,

By their attorneys,

/s/ Jonathan I. Handler
Jonathan I. Handler (BBO #561475)
jihandler@daypitney.com
DAY PITNEY LLP
One International Place
Boston, MA 02110
T: (617) 345-4600
F: (617) 345-4745

Anthony J. Marchetta (*pro hac vice*)
amarchetta@daypitney.com
Richard H. Brown (*pro hac vice*)
rbrown@daypitney.com
DAY PITNEY LLP
One Jefferson Road
Parsippany, NJ 07054-2891
Telephone: (973) 966-6300
Facsimile: (973) 206-1015

Dated: January 12, 2016

## CERTIFICATE OF SERVICE

I, Richard H. Brown, hereby certify that on this 12th day of January 2016, I electronically filed the foregoing and the Declaration of Henrik Villumsen with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

<u>/s/ Richard H. Brown</u>
Richard H. Brown