UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KONINKLIJKE PHILIPS N.V. and PHILIPS LIGHITING NORTH AMERICA CORPORATION, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 15-cv-13086-LTS |
| AMERLUX, LLC and AMERLUX EXTERIOR, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

ORDER ON PROTECTIVE ORDER AND MOTION TO STAY (DOC. NO. 33)

March 10, 2016

SOROKIN, J.

Plaintiffs Koninklijke Philips N.V. and Philips Lighting North America (collectively, "Philips") and defendants Amerlux, LLC and Amerlux Exterior, LLC (collectively, "Amerlux") both manufacture LED lighting devices. Philips sued Amerlux, alleging that certain of Amerlux's products infringe on six patents owned by Philips. Doc. No. 1.

This order resolves two issues pending before this Court. First, Philips and Amerlux disagree regarding three provisions of a proposed protective order. See Doc. Nos. 19, 31, 35. Second, Amerlux has moved to stay this matter pending resolution of *Inter Partes* Review ("IPR") proceedings. Doc. No. 33. Philips opposes a stay. Doc. No. 37. As explained below, with respect to the protective order, the Court (1) declines to adopt an "outside attorneys eyes only" designation; (2) defines outside counsel as counsel of record; and (3) declines to include claim amendments in the prosecution bar. The Court also DENIES Amerlux's motion to stay.

1

I.   PROTECTIVE ORDER

Turning first to the protective order, Fed. R. Civ. P. 26(c) provides that this Court "may, for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that . . . confidential research, development, or commercial information not be revealed or be revealed only in a specified way." The parties have agreed to a protective order in this case, but disagree regarding three of its provisions. First, the parties dispute whether the protective order will include an "Outside Attorneys Eyes Only" designation. Doc. No. 19 at 3-6; see Doc. Nos. 31, 35. Philips argues that such a designation would prevent three in-house counsel, attorneys Michael Fuerch, Daniel Gaudet, and Kellan Ponikiewicz, from reviewing documents limited to outside counsel. Doc. No. 19 at 3-4.

The Court must weigh the risk of "inadvertent or accidental disclosure" against the burden the protective order would place on Phillips and its ability to prosecute its case should its in-house counsel be denied access to certain documents. TiVo Inc. v. Verizon Commc'ns, Inc., Civ. Action No. 2:09-CV-257, 2010 WL 9430466, at * 2 (E.D. Tex. June 15, 2010) (quoting U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468 (Fed. Cir. 1984). Such a determination must be made "on a counsel-by-counsel basis" and depends on whether "in-house counsel are involved in competitive decisionmaking." U.S. Steel, 730 F.2d at 1468. "Competitive decisionmaking" includes "counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions . . . made in light of similar or corresponding information about a competitor." Id. at 1468 n.3. Pricing and product design are hallmarks of competitive decision-making, but "they are only two activities that might implicate or involve competitive decision making." In re Deutsche Bank Trust Co. Americas, 605 F.3d 1373, 1378-79 (Fed. Cir. 2010).

The declarations of the three in-house counsel provide unrebutted evidence that they are not engaged in competitive decision-making to a degree that would necessitate hampering Philips's prosecution of this action by barring some its lawyers from access to certain confidential information.  Attorney Fuerch's role at Philips is to "assist with the implementation of Philips' LED Licensing Program" and anticipates that his role in this action will be "as the primary liason between the outside legal team . . . and the in-house litigation team . . ., reviewing discovery responses and interfacing with relevant Philips business units in response to Amerlux discovery requests, reviewing briefs, [and] reviewing technical and commercial documentation."  Doc. No. 29-1 ¶¶ 31, 33.  Attorney Fuerch will also "review pleadings and contentions," which may contain Amerlux's confidential information, and assist in the preparation of infringement contentions.  Id. ¶¶ 33, 40.  Attorney Fuerch represents that he does not prosecute patents or oversee patent prosecution, and he does not interact with Philips's lighting division or participate in its business decisions.  Id. ¶¶ 36-38.

Attorney Gaudet has participated in "all U.S.-based litigations that have occurred to-date in support of the LED Licensing Program."  Doc. No. 29-2 ¶ 4.  His role in this action will be to "advis[e] on the litigation strategy, manag[e] and interface[e] with the external legal team, coordinat[e] internal resources and strategy among the various lawsuits presently pending and participat[e] in settlement discussions."  Id. ¶ 5.  He will also assist in the preparation of infringement contentions.  Id. ¶ 12.  Attorney Gaudet does not prosecute or oversee the prosecution of patents and does not interact with the lighting arm of Philips "in connection with the Lighting Sector's product marketing, sales, or other competitive/business intelligence efforts."  Id. ¶¶ 8-9.

Attorney Ponikiewicz will be the "primary lead for technical aspects of the case including preparing and reviewing infringement and invalidity contentions and claim construction, analyzing

3

schematics and data sheets for relevant products, reviewing and analyzing prior art, and ensuring consistency with other ongoing U.S. litigation." Doc. No. 29-3 ¶ 4. This will entail reviewing pleadings and contentions that are likely to include Amerlux's confidential information. Id. Like her colleagues, Attorney Ponikiewicz does not prosecute or oversee the prosecution of patents or interact with Philips's lighting unit in any way that implicates competitive decision-making. Id. ¶¶ 7-9.

Philips concedes that all three in-counsel identify potential licensees, negotiate license agreements, oversee procurement and reverse-engineering of potentially infringing products, and pursue enforcement actions, all of which could be characterized as competitive decision-making. Doc. Nos. 29-1 ¶ 1; 29-2 ¶ 1; 29-3 ¶ 1. All three have been involved, to some extent, in IPRs or could be in the future. Doc. Nos. 29-1 ¶ 36, 29-2 ¶ 8, 29-3 ¶ 7. However, the risk of inadvertent disclosure presented by the three in-house counsel in question is attenuated and outweighed by Philips's interest in facilitating access by its counsel most involved in this case to the information necessary to press its claims. See Koninklijke Philips N.V. v. iGuzzini Lighting USA, Ltd., 311 F.R.D. 80, 84-85 (S.D.N.Y. 2015). The Court, therefore, declines to include a designation for "Outside Attorneys Eyes Only" in the protective order.

The second issue pertaining to the protective order is whether outside counsel not "of record" in this action should be allowed access to documents designated as Attorneys Eyes Only. Doc. No. 19 at 6. Philips expressed a particular concern regarding counsel retained by Amerlux to assist in their defense, but who will not enter an appearance. Id. at 7. The Court addressed this matter at the scheduling conference held on November 23, 2015. Doc. No. 21; see transcript, Doc. No. 22. The Court concluded, and reiterates now, that it will not permit counsel not of record, other that in-house counsel, as discussed above, to obtain access to the parties' confidential

information, except as provided in the provisions of the protective order addressing consultants, investigators, and experts. Id. at 53.

The third issue on which the parties disagree is the scope of the protective order's prosecution bar. Doc. No. 19 at 8. The parties agree that the prohibited prosecution activities do not include participation in reexamination proceedings, IPR proceedings, covered business method review proceedings or post-grant review proceedings. Doc. No. 19-2 at 13. Nonetheless, Amerlux proposed that anyone with access to materials covered by the prosecution bar be prohibited from participating in any claim amendments related to the proceedings listed above, presumably because a claim amendment could be used to selectively narrow a patent claim such that Amerlux's products infringe. Philips opposes the provision. Doc. No. 19 at 12.

The Court denies Amerlux's request. "[W]hile claims may be broadened during prosecution to support new, tailor-made infringement allegations, amendments made during reexaminiation can only serve to *narrow* the original claims." Xerox Corp. v. Google, Inc., 270 F.R.D. 182, 184 (D. Del. 2010) (emphasis in original). In other words, Amerlux derives some protection from the fact that a product that did not infringe a patent prior to a claim amendment is unlikely to infringe after the claim is narrowed. Any harm suffered by Amerlux is speculative compared to the harm to Philips in precluding its chosen counsel from participating in claim amendments. "In comparison to the attenuated risk of competitive misuse of defendants' confidential information, the potential harm in denying plaintiff reexamination counsel of its choice is significant." Id. at 185. This is particularly true in this case where Philips's counsel have represented Philips in many district court and patent proceedings. Doc. No. 19 at 9-10; iGuzzini, 311 F.R.D. at 86 (noting possibility that defendant, in seeking to exclude Philips's counsel from claim amendments, was attempting to "disrupt Philips choice of counsel" where counsel had "close

and longstanding relationship" with Philips); In re Deutsche Bank, 605 F.3d at 1381 (noting that a court should consider the "extent and duration" of counsel's representation of client). In addition, Philips's counsel are now engaged in an IPR concerning two of the patents at issue in this suit, but Amerlux is not a party to that action. Amerlux has not demonstrated there is any considerable likelihood Philips will use the IPR to strengthen its claims against Amerlux, a non-participant. See iGuzzini, 311 F.R.D. at 86 (concluding that defendant "has failed to show that it has highly confidential information, not yet disclosed to Philips, which could harm it in post-grant proceedings, where it is not even a participant").

In summary, the Court resolves the points of disagreement regarding the protective order as follows: the Court permits the three in-house counsel specified by Philips to access materials designated for Attorneys Eyes Only; the Court denies Amerlux's request to extend access to attorneys not of record in this proceeding (except for the three in-house counsel); and the Court denies Amerlux's request to prohibit counsel with access to prosecution bar materials from participating in claim amendments in the course of certain patent proceedings.

II.     AMERLUX'S MOTION TO STAY

Amerlux has moved to stay this case pending resolution of IPR proceedings involving two of the six patents allegedly infringed by its products. Doc. Nos. 33, 34 at 5. The IPRs were instituted at the request of Wangs Alliance Corp., the defendant in another infringement suit pressed by Philips. Doc. No. 34 at 5; see Civ. Action No. 14-cv-12298-DJC. Amerlux is not a party to the IPR.

The Court's authority to stay proceedings emanates from its inherent power to manage its docket. Landis v. North Am. Co., 299 U.S. 248, 254 (1936). Three factors are relevant to the Court's discretionary determination:

6

> (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party.

SCVNGR v. eCharge Licensing, LLC, Civ. Action No. 13-12418-DJC, 2014 WL 4804738, at * 8 (D. Mass. Sep. 25, 2014) (internal quotation marks omitted). The Court concludes that the balance of these factors counsels against a stay.

Because this suit is in its incipient stages, the first factor, regarding the extent of completed discovery, weighs in favor of stay. The remaining factors, however, tip the balance against a stay. Amerlux has failed to demonstrate that the outcome of the IPR will appreciably simplify the issues in the case, the second factor. The IPR addresses only two of the six patents-in-suit, and there is no indication that the two patents subject to review constitute the gravamen of Philips's case. Such circumstances generally do not warrant a stay. See SCVNGR, 2014 WL 4804738, at * 10 (collecting cases and concluding second factor weighed against a stay where only three of eight patents-in-suit subject to IPR); but see ACQUIS v. EMC Corp., 109 F. Supp. 3d 352, 357 (D. Mass. 2015) (allowing stay where only two of eleven patents-in-suit were under review, but there was "significant overlap in claim terms" among all asserted claims and patents).

The final factor, undue prejudice or tactical disadvantage to Philips, weighs marginally against a stay. While delay does not in and of itself constitute undue prejudice, four of the six patents at issue will "languish" during the pendency of the IPR. See RR Donnelley & Sons Co. v. Xerox Corp., No. 12-cv-6198, 2013 WL 6645472, at * 3 (N.D. Ill. Dec. 16, 2013). The fact that the parties are competitors generally contributes to the prejudicial determination, and Philips and Amerlux are competitors, but Amerlux is a comparatively small one. More persuasive is the fact that Amerlux is not a party to the IPR, and it has not offered to be bound by the estoppel attendant to IPR proceedings. 35 U.S.C. § 315(e)(2) (if patent holder prevails in IPR, petitioner is estopped

from asserting challenged claim invalid on any ground raised or reasonably could have been raised at IPR).

The Court concludes that Amerlux has not met its burden of demonstrating a stay is warranted. On balance, the relevant factors weigh against a stay of this suit pending the outcome of the IPR.

III.     CONCLUSION

For the foregoing reasons, the Court concludes that the protective order shall permit the three in-house counsel designated by Philips -- but no other retained counsel, unless such counsel registers as counsel of record -- to view materials designated as Attorneys Eyes Only. Further, the protective order's prosecution bar may not prohibit counsel from participating in claim amendments in the course of the proceedings specified as exclusions to the prosecution bar. Finally, the Court DENIES Amerlux's motion to stay this action pending resolution of IPR, Doc. No. 33.

**So Ordered.**

/s/ Leo T. Sorokin
United States District Judge